**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **C.C. & L.C., individually and as next friend to L.L.C.; D.C. & H.C., individually and as next friend to O.C.; C.S., individually and as next friend to J.A., Jr.; S.M. & C.S., individually and as next friend to E.M.,** §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CASE NO. _____** |

§
**Plaintiffs,** §
§
**v.** §
§
**Baylor Scott & White Health;** §
**Baylor Scott & White Health and** §
**Welfare Benefits Plan; Scott &** §
**White Health Plan; and Baylor** §
**Scott & White Holdings.** §
§
**Defendants.** §
§

## CLASS ACTION COMPLAINT

**COME NOW,** Plaintiffs, C.C. and L.C., individually and as next friend to L.L.C.;

D.C. and H.C., individually and as next friend to O.C.; C.S., individually and as next friend

to J.A., Jr.; and S.M. and CS, individually and as next friend to E.M. (also referred to as the

"Named Plaintiffs") on behalf of a putative class of similarly situated employees of

Defendant BSW who are or were participants and beneficiaries of the employee benefit

plan issued by BSW; as well as participants and beneficiaries of self-funded plans

administered by Defendant Scott and White Health Plan (referred collectively as "members

of the class" or "plan participants" or "plan beneficiaries"), by and through their

undersigned counsel, file this Class Action Complaint against the Defendants, Baylor Scott & White Health, the Baylor Scott & White Health and Welfare Benefits Plan, Scott & White Health Plan, and Baylor Scott & White Holdings (referred to individually and collectively as "Defendants"), and state as follows:

## I.   INTRODUCTION

1.      Baylor Scott & White Health ("BSW") is the largest not-for-profit healthcare system in Texas, operating medical facilities throughout Texas. It also provides health benefits to own employees under a self-funded plan, and, through its affiliated company, Scott & White Health Plan, which also insures and administer benefits provided to many other covered lives in Texas under individual, group, and self-funded plans.

2.      Upon information and belief, BSW doctors and specialists, employed by BSW and its affiliated and/or network providers, diagnose children with autism spectrum disorder ("ASD") and prescribe Applied Behavioral Analysis ("ABA") therapy without any limitation to treat ASD. Upon further information and belief: a) said doctors and specialists do not limit their ABA recommendations to only 60 sessions over a child's lifetime because this service is provided intensely, sometimes for many years; and b) and up until BSW's recent decision to impose a 60-visit lifetime limit on ABA therapy for its own plan participants/beneficiaries, almost every child who received ABA therapy insured or covered under a BSW-related health plan, received benefits for ABA service well in excess of 60 visits for life.

3.      Yet for its own employees, BSW's self-funded health plan, the Baylor Scott & White Health and Welfare Benefits Plan (the "BSW Plan"), relies on Summary Plan Descriptions ("SPD" or "SPDs") that prematurely cut short ABA therapy services, and

attempts to limit the therapy to treat ASD, which is a mental health condition, to 60 visits for life.

4.      The BSW Plan imposes a 60-visit lifetime visit limit on all members of the class, which includes its employees, plan participants and plan beneficiaries, despite the recommendations of its own prescribing physicians and affiliated physicians; and recognition and acceptance by its claim administrator, the Scott and White Health Plan, and by the medical community generally, that ABA is the therapeutic service or "gold standard" as medically necessary to treat ASD; and with knowledge that ABA is typically provided early and intensively for sometimes for years at a time.

5.      Moreover, BSW and its affiliated companies, impose a lifetime limit on ABA therapy under the BSW Plan, even though they should know that almost every child with ASD who receives ABA therapy (whether for a number of years or for an even short period of time), will quickly run through the BSW Plan's visit limit, likely in just a few months; and imposing a lifetime limit on ABA therapy violates federal law.

6.      Defendant Scott & White Health Plan is affiliated with BSW and is the claims administrator for BSW's employee benefit plan.   Scott & White Health Plan is also a licensed health insurance company in Texas that also administers benefits and claims as an Administrative Services Only (ASO) for other self-funded benefit plans, throughout Texas.

7.      Upon information and belief, in insuring Texas state regulated health insurance plans and acting as an ASO, Defendant Scott & White Health Plan generally recognizes that ABA therapy is an intensive and medically necessary therapy only available to treat an ASD diagnosis, and that these services are typically provided well in excess of 60-visit per lifetime.

8.      However, upon information and belief, for self-funded plans administered by Defendant Scott & White Health Plan, ABA therapy is barred, excluded and/or denied based on visit limits such as the 60-visit lifetime limit in the BSW SPD. Such a conclusion is apparent from the 60-visit lifetime limit in BSW's SPD (a company with which Scott & White Health Plan is affiliated), as well as Scott & White Health Plan's ABA Medical Policy, which states that ABA therapy is generally covered intensively, well in excess of 60 visits, but that such coverage may be subject to exclusions and limitations. L.L.C., O.C., J.A., Jr., and E.M. and other members of the class are all children diagnosed with ASD. Each of their diagnosing providers prescribed ABA to treat their ASD diagnoses.   However, on the basis of a 60-visit lifetime limit for ABA therapy, which violates federal law, including Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.* (2014), which incorporates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), 29 U.S.C. § 1185a, the Named Plaintiffs and other members of the class were deprived of admitted medically necessary and intensively provided ABA therapy to treat their ASD diagnoses.

9.      As set forth more fully below, on the basis of the 60-visit lifetime limit, which violates federal law, Defendants have: a) erroneously denied coverage for the Named Plaintiffs and other members of the class for medically necessary ABA services to treat their respective ASD diagnoses; b) erroneously caused members of the class to either decrease or entirely halt ABA therapy for their children, against medical advice; c) erroneously caused members of the class to pay for ABA therapy privately, without insurance reimbursement; d) erroneously caused members of the class to purchase additional or alternative insurance which covers ABA therapy without visit limits; e) erroneously caused members of the class

to pay and/or owe their ABA therapists for services that were authorized by Defendants but then retrospectively denied after services were performed pursuant to those authorizations.

10.     Based on the above, the Named Plaintiffs, on behalf of other members of the class, seek relief under ERISA and MHPAEA.

11.     The MHPAEA requires large group self-funded plans, as here, to ensure that there are no separate treatment limitations that are applicable only with respect to services to treat mental health conditions, such as ASD. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii) (stating prohibition on separate treatment limits for mental health benefits); 29 C.F.R. 2590.712(a) (defining mental health benefits as services for mental health conditions). The BSW SPD has only one lifetime visit limit that is applicable only to ABA therapy, and which its affiliate and administrator, Scott & White Health Plan, only allows for the treatment of ASD. Thus, if, as here, an employer sponsored health benefit plan limits coverage for a service (here, ABA therapy) that is only applicable to a mental health condition (here, ASD), the Plan violates the MHPAEA.

12.     The MHPAEA also requires large group self-funded plans, as here, to ensure that the treatment limitations, which include visit limits (quantitative limits), applicable to mental health benefits (defined as services for mental health conditions), are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii) (stating prohibition on more restrictive limitations and including visit limits within the definition of the term treatment limitation); 29 C.F.R. 2590.712(a) (defining treatment limits to include quantitative visit limits).

13.     The statute's regulations define a "predominant treatment limitation" and "substantially all" as limitations that apply to at least two-thirds of the medical benefits in the relevant classification, here outpatient medical benefits. 29 C.F.R. 2590.712(c) (barring quantitative treatment limits and defining terms predominant and substantially all).

14.     Even a cursory examination of the provisions in the BSW SPD indicates that the BSW Plan applies a lifetime visit limit on ABA therapy to treat ASD that is more restrictive that the predominant treatment limits applied to substantially all medical benefits. In fact, only a miniscule portion of the BSW SPD even references visit limits at all, and there is no reference whatsoever in the BSW SPD to any lifetime visit limits for any medical services or benefits whatsoever. Thus, the BSW Plan violates MHPAEA because it is an employer sponsored health benefit plan that applies more restrictive treatment/visit limits on coverage for a service (here, ABA therapy) to treat a mental health condition (here, ASD) than the predominant treatment limits applied to substantially all services in the outpatient category.

15.     Upon information and belief, the self-funded employee benefit plans administered by Scott & White Health Plan include similar terms and provisions, and Defendant Scott & White Health Plan administers those plans similarly. Therefore, as an ASO, Scott & White Health Plan is also violating MHPAEA in relationship to those plans as well.

## II.     PARTIES

16.     C.C. and L.C. were recent residents of Temple, Texas. C.C. was a resident physician in the Family Medicine Residency Program at Baylor Scott & White Medical Center – Temple. He recently left Baylor Scott & White Medical Center – Temple, moving

with his family to Virginia. This family has a child, L.L.C., who was born on September 25, 2011, and is diagnosed with ASD. They were plan participants and/or plan beneficiaries under the BSW Plan, which is subject to the ERISA and MHPAEA.

17.     D.C. and H.C. are residents of Garland, Texas. D.C. is an employee of BSW. This family has a child, O.C., who was born on July 12, 2014, and is diagnosed with ASD. They are plan participants and/or plan beneficiaries who receive health insurance benefits under the BSW Plan.

18.     C.S. and her son J.A., Jr. reside in Harker Heights, Texas. C.S. is an employee of BSW. J.A., Jr. was born on August 31, 2010 and has been diagnosed with ASD. She and J.A., Jr. are plan participants and/or plan beneficiaries who receive health insurance benefits under the BSW Plan.

19.     S.M. and C.S. are residents of Plano, Texas. S.M is an employee of BSW. This family has a child, E.M., who was born on October 12, 2004, and is diagnosed with ASD. They are plan participants and/or plan beneficiaries who receive health insurance benefits under the BSW Plan.

20.     Defendant Baylor Scott & White Health is the largest not-for-profit healthcare system in Texas, which has over 47,000 employees in Texas. Upon information and belief, its principal place of business is Dallas, Texas, and its facilities include approximately 48 hospitals and more than 900 patient care sites throughout Texas, including in Sherman, Texas.

21.     Defendant Baylor Scott & White Health and Welfare Benefits Plan is a self-funded plan, governed by ERISA and the MHPAEA. 29 U.S.C. § 1001, *et. seq.*; 29 U.S.C. § 1185a. Upon information and belief, its principal place of business is Temple, Texas

however the BSW Plan provides coverage to BSW employees throughout the State of Texas.

22.     Defendant Baylor Scott & White Holdings is the Plan Administrator under the BSW Plan. Upon information and belief, its principal place of business is Irving, Texas. However, as the Plan Administrator of the BSW Plan, it provides services to BSW employees throughout the State of Texas. Defendant Baylor Scott & White Holdings is an admitted and named fiduciary under the BSW Plan and in relationship to its claims administrations and determinations related to the interpretation of BSW Plan's Summary Plan Descriptions.

23.     Defendant Scott & White Health Plan is the claims administrator and fiduciary under the BSW Plan. Upon information and belief, this Defendant is affiliated and/or otherwise related to BSW. Upon information and belief, Defendant Scott & White Health Plan is also an ASO, providing administration services to self-funded benefit plans throughout Texas, covering over 200,000 lives in Texas. Upon information and belief, Scott & White Health Plan's principal place of business is Temple, Texas, however, as a Texas licensed health insurer, claim administrator of the BSW Plan, and administrator of other plans, it provides services to BSW employees and other policyholders, participants and beneficiaries, throughout the State of Texas.

### III.  JURISDICTION & VENUE

24.     This action is brought under the MHPAEA, 29 U.S.C. §1185a; and ERISA, 29 U.S.C. § 1132(a), 29 U.S.C. §§ 1132(f) & (g), and it involves employee benefits claimed under a plan regulated and governed by ERISA. Jurisdiction is predicated 29 U.S.C. § 1132 and 28 U.S.C. § 1131 and because this matter involves federal questions.

25.     The Named Plaintiffs, on behalf of members of the class, in this matter seek equitable relief under ERISA and the MHPAEA, injunctive relief pursuant to Rule 65 of The Federal Rules of Civil Procedure, and such other relief as is just and proper, including but not limited to make whole relief, surcharge, disgorgement, attorneys fees, costs and expenses.

26.     This action is brought as a class for the purpose of obtaining benefits under the BSW Plan, and other plans administered by Scott & White Health Plan, seeking to clarify benefits and obtain a related declaration, and to enforce The Named Plaintiffs' and the members of the class' rights under those plans and federal law.

27.     Venue is appropriate in federal court in Texas. This matter involves claims under the MHPAEA and ERISA, and upon information and belief, Defendants do business and provide benefits through the BSW Plan and other plans covering participants and/or beneficiaries throughout the State of Texas. 29 U.S.C. § 1132(e)(2); and 28 U.S.C. § 1391(b)(3).

## IV.     STANDARD OF REVIEW

28.     The Plan's 60-visit lifetime limit on ABA therapy under ERISA and MHPAEA is subject to *de novo* review as this matter involves a question of law related to Defendants' violation of the MHPAEA as incorporated by ERISA.

## V.     FACTS

### 1.  ASD and ABA Therapy

29.     ASD is a mental health condition in which individuals exhibit "[p]ersistent deficits in social communication and social interaction across multiple contexts" and often have significant behavioral challenges including "restrictive, repetitive patterns of

behavior." *See* Diagnostic and Statistical Manual of Mental Disorders 5th Edition (DSM-5). ASD is included as a mental health condition in the current DSM and ICD, recognized as much in the medical community, and defined as a mental health disorder in the BSW SPD (at 115). Therefore, it is without question that Plaintiffs' ASD diagnoses are mental health conditions protected by the MHPAEA. *See, e.g.*, 29 C.F.R. 2590.712(a) (defining mental health benefits as "services" for mental health conditions that must be defined by reference to the DSM, ICD, or other generally recognized standards). *See also* Scott & White Medical Coverage Policies on Autism Spectrum Disorders and Intensive Behavior Therapy for Autism Spectrum Disorders.

30.     ABA therapy is a well-recognized treatment for ASD, established by rigorous scientific review. It applies the science of behavior intervention(s) to increase positive and/or decrease negative behaviors. ABA is a form of behavior therapy that is a provided on an intensive individualized and daily basis and focuses on small and incremental breakthroughs in social, communication, and behavioral deficits. As skills increase incrementally, children with ASD overcome deficits and increase functionality. *See id.*

31.     For young children diagnosed with ASD, intensive ABA therapy, provided in excess of 25-30 hours a week, oftentimes for many years, is the standard of care and treatment recognized by the medical and professional communities following years of research and clinical documentation regarding the benefits of the therapy.

32.     Over time, after receiving ABA therapy, the benefits of the therapy build, and the majority of children with ASD who receive ABA therapy make significant leaps in their social, communication, and behavioral deficits. In contrast, if a child with ASD does

not receive early and intensive ABA therapy at the level/hours that he or she needs or not at all, the child will suffer permanent harm by not developing the skills necessary to address and/or overcome the deficits of ASD.

**2. Underlying Facts Related to the Plan's Denial and/or Limitation on ABA Therapy**

33.     All claims of the Named Plaintiffs, and members of the class, arise out of Defendants imposing and enforcing a 60-visit lifetime limit or similar visit limits or exclusions on ABA therapy that are explicitly in plans and/or SPDs, which violate the MHPAEA and ERISA.

**a. Claims Related to the Denial of ABA Therapy**

34.     Plaintiffs, L.L.C., O.C., and J.A. Jr., as well as other members of the class covered by the BSW Plan, are and/or were beneficiaries under the BSW Plan at all relevant times, are diagnosed with ASD; have been receiving (and will continue to receive) ABA therapy previously authorized and covered by the BSW Plan for periods of time September 2015 through to the Fall of 2017, with the BSW Plan's authorizations confirming medical necessity for this service, and agreeing to authorize and cover their ABA therapy claims well in excess of the BSW Plan's 60-visit lifetime limit.

35.     Upon information and belief, the aforementioned Plaintiffs, and other members of the class, and/or their ABA providers verified that services for ABA therapy were unlimited; obtained authorizations of ABA therapy well in excess of the 60-visit lifetime limit, sometime for many years, with the authorizations agreeing to cover claims and recognizing medical necessity for this service well in excess of 60 visits for life. Plaintiffs and other members of the class were misled by issuance of the authorizations, communications with Defendants and coverage materials provided to them, either

intentionally and/or negligently, to believe that ABA therapy was an unlimited benefit, until the early Fall of 2017.  At this point in time, Scott & White Health Plan first started issuing Explanations of Benefits denying ABA therapy and mentioning a benefit limit on ABA and this is also when Scott & White Health Plan first began denying re-authorizations of ABA therapy, on the basis of a 60-visit lifetime limit in the relevant BSW SPD.

36.     The aforementioned Plaintiffs, and other members of the class, exhausted internal appeals of the denial of ABA therapy, with the BSW Plan's final (and initial) denial letters acknowledging that the basis of denial was not medical necessity, but rather, was based on the 60-visit lifetime limit on ABA therapy in the relevant BSW SPD.

37.     As a result of these denials long after the services were authorized and allowed, ABA therapy claims of Plaintiffs above, and other members of the class, were retrospectively denied, with the BSW Plan in some instances either not paying preauthorized ABA claims and/or recouping prior claims payments from providers, who now can and are holding said Plaintiffs and members of the class liable to pay for these services.

38.     Plaintiffs and other members of the class submitted voluntary second level appeals to the BSW Administrative Committee, to which they never received a response, contrary to the terms of the relevant BSW SPD.

39.     As set forth more fully below, the 60-visit lifetime limit on ABA in the BSW Plan violates the MHPAEA. The aforementioned Plaintiffs as class representatives have received medically necessary ABA therapy services to treat ASD, a mental health condition, and have exhausted the lifetime visit limit in the BSW SPD/Plan. In light of the 60-visit lifetime limit on ABA therapy in the BSW SPD, the denials in excess of that lifetime visit

limit, as well as the written and other representations by the Plan that it does not cover ABA therapy in excess of the 60-visit lifetime limit, any attempt by class members to pursue administrative remedies, to the extent required under the law, is futile. Nonetheless, the aforementioned Plaintiffs, and other members of the class, have completed the internal appeals process in to no avail and have exhausted their administrative remedies. Regardless, appeals are futile and unnecessary because this matter involves a question of law.  The Named Plaintiffs, as well as other members of the class, have performed all conditions precedent to filing this lawsuit.

40.     Upon information and belief, Defendant Scott & White Health Plan administers other self-funded plans governed by ERISA that contain or include similar visit limits on ABA therapy; and Scott & White Health Plan only allows ABA for the treatment of ASD. Thus, Scott & White Health Plan has similarly denied/recouped coverage for ABA therapy in violation of MHPAEA, damaging the members of the class who are covered by self-funded plans other than BSW Plan.

**b.  Equitable Claims Related to the Lifetime Visit Limitation on ABA Therapy**

41.     E.M., who is a beneficiary under the BSW Plan, is diagnosed with ASD, has been receiving ABA therapy since 2011.

42.     As set forth more fully below, the 60-visit lifetime limit in the BSW Plan violates the MHPAEA.  E.M.'s parents and other members of the class have repeatedly advised BSW that that the lifetime limit on ABA therapy under the Plan is not even remotely sufficient to cover ABA services for their or any other child under the BSW Plan and have repeatedly asked BSW to lift and/or remove the ABA therapy limit in the BSW Plan. Despite their requests and BSW's knowledge that the limit, which is in violation of

federal law, is wholly insufficient to treat ASD, BSW has failed to remove the lifetime limit on ABA therapy in its plan.

43.     E.M. as class representative has received medically necessary ABA therapy services to treat her ASD, a mental health condition. The level of ABA services that she has received (and will continue to receive) would have long ago exhausted the lifetime visit limit on ABA therapy in the BSW Plan. Because of the 60-visit lifetime limit for ABA under the BSW Plan, E.M.'s parents, as well as other members of the class under the BSW Plan have been caused to obtain additional or alternative other insurance or health benefits to cover ABA on an unlimited basis without reference to visit limits, which have covered and allowed claims for their child's ABA therapy.

44.     Defendants have a duty to ensure that their self-funded plan complies with federal law, as recognized and stated in the BSW SPD. Because E.M.'s family, as well as other similarly situated members of the class, did not make claims under the BSW Plan and instead solely seek equitable relief under 29 U.S.C. § 1132(a), they are not required to exhaust any internal appeals process. In any event, such appeals would have been futile.

45.     Upon information and belief, Defendant Scott & White Health Plan administers ASD benefits for other self-funded plans governed by ERISA that contain or include similar visit limits (and plan designs for other self-funded plans) on ABA therapy; and Scott & White Health Plan only allows ABA therapy for the treatment of ASD. Thus, Scott & White Health Plan has similarly caused members of the class covered under other self-funded plans administered by Scott & White Health Plan to obtain additional or alternative insurance or health benefits to cover ABA on an unlimited basis without

reference to visit limits, and such additional/alternative plans have subsequently covered and allowed their child's ABA therapy claims.

> **D.**     **Relevant Summary Plan Description Provisions**

46.     The BSW Plan is a self-funded plan and the SPD specifically states that it is governed by federal law, *see, e.g.*, BSW SPD at 17, which includes ERISA and the MHPAEA.

47.     For many years, E.M.'s family, and, upon information and belief, other members of the class have requested the BSW Plan documents to no avail, and they have instead received copies of various summary plan descriptions, as described herein.

48.     The 2017 BSW SPD names "Baylor Scott & White Holdings" as the Plan Administrator and the agent for service of process and "Scott & White Health Plan" as the Claims Administrator. BSW SPD at 20-21.

49.     The BSW SPD states that the Plan provides coverage for medically necessary medical and mental health services. *See, e.g.*, SPD at 63-64.

50.     The BSW SPD further states that the Plan covers ABA therapy to treat autism, which it defines as a "mental disorder." SPD at 115. The SPD, however, states a 60-visit lifetime limit on ABA therapy and requires preauthorization of this service.

51.     Under the terms in the BSW SPD, ASD is defined in the SPD as a mental disorder. The only service in the BSW SPD, for which there is a lifetime **visit** limit is ABA therapy, which is only allowed by administrator Scott & White Heath Plan to treat the diagnosis of ASD.

52.     The only other lifetime limits in the BSW SPD are not relevant for the purposes of a MHPAEA analysis, and include a **monetary/financial** limit for fertility

services ($7,500 under the medical provision and $7,500 under the pharmaceutical provision) and a **surgical limit** of one morbid obesity surgery.

53.     Similarly, the BSW SPD refers to very few **annual** (not lifetime) visit limits (60 visits annually speech, occupational and physical therapy, 20 visits annually for acupuncture, and 120 visits annually for home healthcare). These annual visit limits are not comparable to lifetime visit limits, which are much more restrictive, and, in any case, are miniscule in comparison to the comprehensive outpatient medical services in the BSW SPD, which do not include any other annual (or lifetime) visit limits whatsoever.

54.     The BSW SPD states that the claims administrator, Scott & White Health Plan, has discretionary authority to determine benefit amounts payable for claims, interpret plan provisions and coverage issues, resolve uncertainties and make decisions about facts and circumstances related to plan claims.

55.     The BSW SPD also states that ABA therapy must be preauthorized, or in other words, approved in advance.  It further states that preauthorization occurs when a service is "consistent with the benefit plan language." BSW SPD at 103. This language indicates that if services are preauthorized, the authorization complies with the benefit plan language and must be covered.

56.     In the event a claim is denied, the BSW SPD provides one level of internal appeals. It permits but does not require plan participants and beneficiaries to bring second level appeals to the Employee Benefits Administrative Committee ("EBAC"), but requires the Committee to review appeals within specified periods of time in relationship to its committee meetings and to respond to such appeals. The EBAC, has among other things, the

discretionary authority to interpret the terms of the plan, decide all appeals, and resolve uncertainties as to all self-funded coverage issues.

57.      The BSW SPD states that after one level of internal appeal under the medical plan provisions, a beneficiary can seek relief in court under ERISA.

58.      Upon information and belief, Defendant Scott & White Health Plan has administered claims, acted as administrator for other self-funded plans with the aforementioned or similar provisions and limitations, and has similarly denied coverage for ABA therapy pursuant to similar visit limits in plans/SPDs for those other plans. This is indicated by the fact that Scott & White Health Plan's actions as administrator for BSW, its administration of the ABA therapy claims in relationship to the BSW Plan,  and its ABA Medical Policy, which indicates that intensive coverage for ABA therapy can be limited through policy provisions and exclusions.

## VI.   CLASS ALLEGATIONS

59.      This action is properly maintainable as a class action to Rule 23.

60.      This action is brought on behalf of Named Plaintiffs and a putative class consisting of similarly situated individuals who were or are participants and/or beneficiaries of benefit plans issued and/or administered by Defendants.

61.      The class is defined as all participants or beneficiaries under the BSW Plan and self-funded, ERISA-governed benefit plans administered by Defendant Scott & White Health Plan:

      a.   who have received, or should have received coverage for ABA therapy;

      b.   are or were enrolled in the BSW Plan, which is governed by ERISA and MHPAEA, which has more than 47,000 employees;

    c.  are or were enrolled in a self-funded benefit plan, which cover medical and mental health services throughout Texas, are administered by Scott & White Health Plan, and governed by ERISA and MHPAEA;

    d.  in which the plan/SPD by its stated terms and/or as administered by Scott & White Health Plan impose a 60-visit lifetime limit or similar visit limit or exclusions on ABA therapy.

62.    The claims of the Named Plaintiffs are typical of the claims of the putative class. The Named Plaintiffs and other members of the class were all subject to Defendants' willful application of illegal, written, terms contained in a benefit plan, which applies to all members of the class. The Named Plaintiffs and members of the class members thus have sustained similar injuries as a result of Defendants' actions.

63.    The Named Plaintiffs' claims are based, in large part, upon a determination of whether the terms of the Plan that impose quantitative lifetime visit limits on ABA therapy, are illegal.

64.    Defendants, by the very terms of the Plan and/or as administered by Scott & White Health Plan, uniformly apply the same or similar illegal visit limits on ABA therapy to all members of the class.

65.    The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. The Named Plaintiffs have retained counsel experienced in complex ERISA and MHPAEA matters and class action litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Named Plaintiffs and members of the class lack the financial resources to adequately prosecute separate lawsuits against Defendants. Furthermore, the

damages for each individual are small compared to the expense and burden of individual prosecution of this litigation.

66.     A class action under Rule 23 will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the BSW Plan/SPD and/or other plans administered by Scott & White Health Plan.

## VII.  CAUSE OF ACTION

### COUNT 1

### VIOLATION OF THE MHPAEA, 29 U.S.C. 29 U.S.C. § 1185a, AND ERISA, 29 U.S.C. § 1132(a)

67.     Plaintiffs repeat and reallege the above paragraphs as if more fully set forth herein.

68.     The MHPAEA is incorporated within ERISA and applies to large group plans, including self-funded plans such as the BSW Plan and other self-funded plans administered by Defendant Scott & White Health Plan, which provide medical and mental health benefits to plan participants and beneficiaries. 29 U.S.C. § 1185a.

69.     The BSW Plan is a large group self-funded plan and its SPDs specifically state that it is governed by federal law, *see, e.g.*, SPD at 17, which includes ERISA and the MHPAEA.

70.     Where, as here, with respect to the BSW Plan and other self-funded plans administered by Defendant Scott & White Health Plan, a plan covers mental health and medical/surgical benefits, they are barred under the MHPAEA from imposing less favorable benefit limitations on coverage for mental health treatments than are imposed on medical/surgical benefits. *See* 29 U.S.C. § 1185a(a)(3)(A); *see also* 29 C.F.R. 2590.712(c)(2).

71.     The BSW Plan and other self-funded plans administered by Defendant Scott & White Health Plan cover substantially all outpatient medical and surgical benefits, and where, as here, a plan covers mental health benefits, it is obligated to comply with MHPAEA.

72.     According to the ERISA's provisions which incorporate the MHPAEA, plans, as here, that cover mental health and medical/surgical benefits are required to ensure that: 1) there are no separate treatment limitations that are applicable only with respect to mental health benefits, defined to be services for mental health conditions; or 2) the treatment limitations – including visit limits – applicable to such mental health benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage). *See* 29 U.S.C. §1185a(a)(3)(A)(ii); *see also* 29 C.F.R. 2590.712(c)(2).

73.     The MHPAEA regulations define the term "mental health condition" as:

> consistent with generally recognized independent standards of current medical practice (for example, the most current version of the Diagnostic and Statistical Manual of Mental Disorders (DSM), the most current version of the ICD, or State guidelines). 29 C.F.R. 2590.712(a).

74.     ASD is included as a mental health condition in the current DSM and ICD as well as in the BSW SPD (at 115, defining ASD as a "mental disorder"), and generally recognized as much by the medical community. Therefore, it is without question that the Named Plaintiffs' and other members of the class' ASD diagnoses are mental health conditions protected by the MHPAEA.  ABA therapy prescribed to treat ASD for the Named Plaintiffs and other members of the class, is a mental health service with respect to a mental health condition and is protected by the MHPAEA.

75.    The MHPAEA requires large group self-funded plans, as here, to ensure that there are no separate treatment limitations that are applicable only with respect to services to treat mental health conditions, such as ASD. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii) (prohibition on separate treatment limits for mental health); 29 C.F.R. 2590.712(a) (defining mental health benefits as services for mental health conditions). The only lifetime visit limit which so restricts coverage by BSW is the 60-visit limit for ABA therapy, which its affiliate and administrator, Scott & White Health Plan, only allows for the treatment of ASD. Thus, if, as here, an employer sponsored health benefit plan limits coverage for a service (here, ABA therapy) that is only applicable to a mental health condition (here, ASD), the Plan violates the MHPAEA.

76.    The MHPAEA also requires large group self-funded plans, as here, to ensure that the treatment limitations, which include visit limits (quantitative limits), applicable to mental health benefits (defined as services for mental health conditions), are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii) (stating prohibition on more restrictive limitations and including visit limits within the definition of the term treatment limitation); 29 C.F.R. 2590.712(a) (defining treatment limits to include quantitative visit limits).

77.    The statute's regulations define a "predominant treatment limitation" and "substantially all" as limitations that apply to at least two-thirds of the medical benefits in the relevant classification, here outpatient medical benefits. 29 C.F.R. 2590.712(c) (barring quantitative treatment limits and defining the terms predominant and substantially all).

78.     Even a cursory examination of the provisions in the BSW SPD indicates that the BSW Plan applies an annual lifetime visit limit to ABA therapy, which its affiliate and administrator, Scott & White Health Plan, only allows for the treatment of ASD, that is more restrictive than the predominant treatment limits applied to substantially all medical benefits. In fact, only a miniscule portion of the BSW SPD even references visit limits at all, and there is no reference whatsoever in the BSW SPD to any lifetime visit limits for any medical services or benefits whatsoever. Thus, if, as here, an employer sponsored health benefit plan applies more restrictive treatment/visit limits coverage for a service (here ABA therapy) that is only applicable to a mental health condition (here, ASD), the BSW Plan violates the MHPAEA.

79.     Upon information and belief, Defendant Scott & White Health Plan administers other self-funded plans governed by ERISA that contain or include similar visit limits on ABA therapy; and Scott & White Health Plan only allows ABA for the treatment of ASD. Thus, Scott & White Health Plan has similarly denied coverage for ABA therapy in violation of MHPAEA, thus damaging the members of the class who are covered by self-funded plans other than BSW Plan.

80.     ERISA's provisions, which incorporate the MHPAEA, supersede and preempt any contrary plan or SPD provisions.

81.     ERISA allows a participant or beneficiary to bring an action to "recover benefits under the terms of the plan, or clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B).

82.     Additionally, ERISA permits "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the

plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Equitable relief under 29 U.S.C. § 1132(a)(3) includes, but is not limited to, contract

reformation, declaratory relief, equitable estoppel, and other "make whole" relief,

potentially including relief related to unjust enrichment, as well as surcharges and

disgorgement to prevent Defendants' unjust enrichment.

83.     The Defendant Claims and Plan Administrators have a duty under ERISA to

interpret the Plan's policy obligations, and ensure that claims, appeal, and denial processes

conform with federal law and regulations and to comply with plan terms that require same.

*See* 29 U.S.C. § 1132(a)(3); *A.F. v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1304 (D.

Ore. 2014); *cf.* 29 U.S.C. § 1104(a).

84.     The requirements of the MHPAEA as incorporated by ERISA, preempt a

plan or its administrator's interpretation of plan provisions/obligations and/or a plan's intent

to include illegal exclusions and provisions that otherwise bar or limit coverage in violation

of federal law. As noted, *supra*, Defendants attempt to impose a lifetime visit limit on

coverage of ABA therapy to treat ASD, which violates the MHPAEA. Defendants denied

Plaintiffs' L.L.C.'s, O.C.'s, and J.A., Jr.'s ABA therapy for more than 60 lifetime visits in

violation of the MHPAEA and ERISA, as, upon information and belief they did for other

members of the class, whether covered under the BSW Plan or other self-funded plans that

are or were administered by the Scott & White Health Plan and contain the same or similar

visit limits. All internal administrative remedies have been exhausted in this matter, and

regardless, appeals are futile and unnecessary because this matter involves a question of

law.  The Named Plaintiffs, as well as other members of the class, have performed all

conditions precedent to filing this lawsuit.

85.     For Plaintiff E.M., and other members of the class who did not make claims,

they are not required to exhaust internal administrative remedies. In any event, such appeals

are futile and unnecessary because this issue involves a question of law.  These Plaintiffs, as

well as other members of the class, have performed all conditions precedent to filing this

lawsuit.

86.     As a direct and proximate result of the denial of medical benefits, Plaintiffs

and other members of the class have been and continue to be denied coverage for ABA

therapy services in violation of the MHPAEA.

87.     As further direct and proximate result from Defendants' improper benefit

determination, the Named Plaintiffs and other members of the class have incurred attorneys'

fees and costs to which they are entitled under 29 U.S.C. § 1132(g).

88.     Due to Defendants' wrongful conduct, the Named Plaintiffs and other

members of the class are entitled to: relief clarifying and enforcing their rights under their

plan, a declaratory judgment as to past and future benefits under their plan; an order

adjudging Defendants in breach of ERISA and the MHPAEA; "make whole" and equitable

relief including but not limited to restitution; reimbursement of insurance premiums, co-

pays and deductibles for other additional or alternative insurance coverage which covers

ABA therapy without visit limits; out of pocket expenses for ABA therapy; surcharges;

disgorgement; prejudgment and post judgment interest; attorneys' fees and costs pursuant to

29 U.S.C § 1132(g); and such other relief as the Court deems just and proper to make the

Named Plaintiffs and other members of the class whole.

## VIII. <u>PRAYER FOR RELIEF</u>

**WHEREFORE, PREMISES CONSIDERED,** The Named Plaintiffs and other class members pray for judgment against Defendants as follows:

89.     Certify this matter as a class action, designating the Named Plaintiffs as class representatives;

90.     Designate THE HARRIS FIRM, P.C. and BOUER LAW LLC as class counsel;

91.     A Declaration that Defendants:

a) violated ERISA and the MHPAEA by use of a 60-visit lifetime limit on ABA therapy or similar visit limits;

b) breached their respective duties under ERISA and MHPAEA by attempting to limit ABA therapy to 60 visits per lifetime (or limiting ABA therapy based on similar visit limits in non-BSW Plans), by preauthorizing these services, but then erroneously denying such claims and/or attempting to recoup amounts allowed, on the basis of a 60-visit lifetime limit (or limiting ABA therapy based on similar visit limits in non-BSW Plans);

c)  are barred from denying ABA claims on the basis of visit limits and must strike any such visit limits from any plan documents and summary plan descriptions; and

d) are equitably estopped and barred from recouping and/or denying any previously authorized ABA therapy in excess of 60 visits per lifetime (or similar visit limits in non-BSW Plans), any resulting ABA services paid for privately by Plaintiffs and other members of the class, as well as any amounts paid towards

alternative insurance or health benefit plans, which do not include a 60-visit

lifetime limit (or similar visits limits in non-BSW Plans) on ABA therapy, which

has allowed such claims.

92.     Requiring Defendants to cover and pay to Named Plaintiffs and other

members of the class benefits for any unreimbursed and/or denied ABA services, not

allowed, covered or denied on the basis of a 60-visit lifetime visit limit (or similar visit

limits in non-BSW Plans) on ABA therapy;

93.     Requiring Defendants to pay Named Plaintiffs and other members of the

class amounts Plaintiffs and other members of the class paid to their ABA providers or to

which they are so obligated, where ABA services were initially authorized by Defendants

but later denied and/or recouped based on a 60-lifetime visit limit (or similar visit limits in

non-BSW Plans);

94.     Required Defendants to reimburse the Named Plaintiffs and any other

members of the class for ABA services paid for privately because of the refusal to cover

ABA therapy on the basis of the 60-visit lifetime limit (or similar visit limits in non-BSW

Plans);

95.     Requiring Defendants pay the Named Plaintiffs' and other members costs

associated with additional, alternative insurance or health coverage or health benefits that

Plaintiffs and other members of the class obtained to cover ABA therapy without visit

limits, so long as that alternate insurance policy or health benefit plan allowed ABA claims;

and such damages shall included but not limited to premiums, copays, deductibles, out of

pocket maximums and any other related expenses;

96.     Requiring Defendants to pay for future ABA services without imposing any visit limits on this service;

97.     Requiring Defendants to pay make whole relief, surcharges and/or disgorge any profits, pursuant to ERISA;

98.     Requiring Defendants to reform any plan documents and SPDs to include coverage for ABA therapy with no visit limits, so as to ensure conformity with the requirements of ERISA and the MHPAEA.

99.     Attorney's fees and costs incurred in pursuing this action pursuant to 29 U.S.C. § 1132(g).

100.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,
**THE HARRIS FIRM, P.C.**
Attorneys and Counselors at Law
5050 West Lovers Lane
Dallas, Texas 75240
(214) 956-7474 Office
(214) 956-7405 Facsimile

By:  /s/  Austin H. England
         Austin H. England
         AUSTIN H. ENGLAND, P.C. of counsel
         Texas State Bar No. 06619750


**BOUER LAW LLC**
Jodi F. Bouer
Texas Bar #24099470
55 Phillips Avenue
Lawrenceville, NJ 08648
jbouer@bouerlaw.com
Phone: (609) 924-3990
Fax: (609) 228-6750

**ATTORNEYS FOR PLAINTIFFS**