UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C.C. & L.C., individually and as next | § | |
| friends to L.L.C., ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:18-CV-828-SDJ |
| | § | |
| BAYLOR SCOTT & WHITE | § | |
| HEALTH, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Scott & White Health Plan's ("S&W") Motion to Dismiss. (Dkt. #30). Plaintiffs[1] allege violations of the Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), 29 U.S.C. § 1185a, as incorporated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.[2] (Dkt. #26). S&W moved to dismiss all claims against it, (Dkt. #30), and Plaintiffs responded, (Dkt. #49). S&W filed a reply, (Dkt. #57), and Plaintiffs filed a sur-reply, (Dkt. #58).

Having reviewed the motion, the parties' briefing, and the applicable law, the Court concludes that S&W's Motion to Dismiss should be **DENIED**.

---

[1] Plaintiffs in this case are C.C. and L.C., individually and as next friends to L.L.C.; D.C. and H.C., individually and as next friend to O.C.; C.S., individually and as next friend to J.A. Jr.; and S.M. and C.S., individually and as next friend to E.M.

[2] 28 U.S.C. § 1132 is commonly referred to by its public law section number, Section 502. For the purposes of this opinion, the Court will refer to it by its codified section number, Section 1132.

# I. BACKGROUND

The Parity Act prohibits discrimination in the provision of insurance coverage for mental health conditions as compared to coverage for medical and surgical conditions in employer-sponsored group health plans. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016). The Act thus requires group health plans that provide mental-health or substance-abuse disorder benefits, in addition to medical and surgical benefits, to ensure that "the treatment limitations applicable to such mental health or substance abuse disorder benefits are no more restrictive than" the treatment limitations applied to medical or surgical benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).[3] There is no private right of action under the Parity Act, but portions of the Act are incorporated into ERISA and may be enforced using the civil enforcement provisions in ERISA Section 1132. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 50 F.Supp.3d 157, 161 (D. Conn. 2014), *aff'd*, 821 F.3d 352 (2d Cir. 2016).

Plaintiffs C.C., D.C., C.S., and S.M. are all current or former employees of Defendant Baylor Scott & White Health ("BSW"). Plaintiffs C.C., D.C., C.S., and S.M., along with their spouses and children (together, the "Plaintiffs"), are or were enrolled in an ERISA-governed employee health-benefit plan—the Baylor Scott & White Health and Welfare Benefits Plan (the "BSW Plan"). Defendant Baylor Scott & White

---

[3] The Parity Act's prohibition on unequal treatment limitations includes "both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a); *accord Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F.Supp.3d 1209, 1219 (D. Utah 2019).

Holdings ("BSW Holdings") is the plan administrator for the BSW Plan. BSW Holdings outsources the claims-benefit process to a separate entity: S&W. Plaintiffs allege that S&W also acts as the claims administrator for other self-funded health plans subject to ERISA (the "Unnamed Plans"). (Dkt. #26 ¶ 50).

C.C., D.C., C.S., and S.M. each have children who have been diagnosed with Autism Spectrum Disorder ("ASD"). These children receive some combination of Applied Behavioral Analysis ("ABA") therapy, speech therapy, physical therapy, and occupational therapy. In addition to covering medical and surgical benefits for plan participants and beneficiaries, the BSW Plan covers these forms of ASD therapy.

According to Plaintiffs, for the 2016 through 2018 plan years, the BSW Plan limited coverage to: (1) only sixty lifetime visits for ABA therapy; (2) ABA therapy only where preauthorized, meaning that approval for treatment is required before services; (3) sixty annual visits for speech therapy; and (4) a combined sixty-visit annual limit for physical and/or occupational therapy. (Dkt. #26 ¶ 36).[4] Plaintiffs allege that the Unnamed Plans also provide coverage for ASD therapy but place similar limits on treatment. (Dkt. #26 ¶¶ 50–51). Plaintiffs further allege that the BSW Plan and the Unnamed Plans do not place the same limitations on medical or surgical treatments—only on ASD therapy. (Dkt. #26 ¶¶ 38, 50).

---

[4] Plaintiffs maintain that, for the 2019 plan year, the BSW Plan modified its limits on ABA therapy from sixty lifetime to sixty annual visits, but BSW employees were not properly notified of this change. (Dkt. #26 ¶¶ 44–45). Because Plaintiffs allege that the BSW Plan places visit limits—annual or lifetime—only on mental-health benefits and not on medical or surgical benefits, the modification does not affect the Court's analysis of S&W's motion.

Plaintiffs claim that S&W's denial of coverage for ASD therapy based on lifetime or annual visit limitations, when similar limits have not been placed on medical and surgical benefits, violates 29 U.S.C. §§ 1132(a) and 1185a. Plaintiffs bring this class action on behalf of participants and beneficiaries of both the BSW Plan and the Unnamed Plans who allegedly have been denied coverage by S&W for ASD therapy.

S&W moves to dismiss Plaintiffs' claims for failure to state a claim for which relief can be granted. S&W asserts several arguments in favor of dismissal. First, S&W argues that all claims against it should be dismissed because S&W lacks "actual control" over the BSW Plan and the Unnamed Plans. Second, S&W argues that the Court should dismiss Plaintiffs' claims relating to the Unnamed Plans because Plaintiffs have failed to plead a lack of parity between mental health benefits and medical and surgical benefits for the Unnamed Plans. Third, S&W argues that Plaintiffs' Rule 23 class allegations are so facially defective as to warrant dismissal.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Id*.

In assessing a motion to dismiss under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether plaintiffs have pleaded enough to "nudge[] their claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id*. at 679–80 (quoting *Twombly*, 550 U.S. at 570). This threshold is met if the court determines that the plaintiff pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. DISCUSSION

### A. Plaintiffs Adequately Allege Section 1132(a)(1)(B) and (a)(3) Claims under the BSW Plan.

S&W argues that it should be dismissed as to all claims asserted by Plaintiffs because it does not exercise "actual control" over the BSW Plan (or the Unnamed Plans) such that it is a proper defendant. Plaintiffs maintain that, under controlling Fifth Circuit precedent, S&W exercises sufficient control over both the BSW Plan and the Unnamed Plans that it may be held liable for the alleged Parity Act violations and that therefore S&W's dismissal motion fails.

### i. Section 1132(a)(1)(B)

Section 1132(a)(1)(B) empowers "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs allege that the BSW Plan violates Section 1185a(a)(3)(A)(ii) of the Parity Act by imposing annual and lifetime visit limits on ASD treatments, which are more restrictive than the limits applied to medical or surgical treatments under the BSW Plan. (Dkt. #26 ¶¶ 101–02).[5] S&W counters that, regardless of the merits of Plaintiffs' contentions concerning the BSW Plan's alleged violation of the Parity Act, S&W cannot be liable for any such violation because S&W has "no control" over the BSW Plan. (Dkt. #30 at 10–11).

---

[5] Plaintiffs assert that the BSW Plan's limits are both "quantitative and non-quantitative." *E.g.*, (Dkt. #26 ¶¶ 65–67, 76, 86 127–28); *see* 29 C.F.R. § 2590.712(a) (prohibiting both quantitative and nonquantitative unequal treatment limitations).

The parties agree that the issue of whether S&W exercises sufficient control over the BSW Plan to be a proper defendant is governed by the Fifth Circuit's decision in *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs, Inc.*, 703 F.3d 835 (5th Cir. 2013). In *LifeCare*, the Fifth Circuit considered an issue of first impression: whether an ERISA claimant may bring suit under Section 1132(a)(1)(B) against a third-party administrator. *Id.* at 843 n.7. The court began by observing that the plain language of Section 1132(a)(1)(B) "does not limit the scope of defendants that a claimant may bring a lawsuit against" and that several sister circuits had held that "entities other than the benefits plan or the employer plan administrators may be held liable under § 1132(a)(1)(B)." *Id.* at 843. The court went on to note that courts finding liability under Section 1132(a)(1)(B) applied a "restrained functional test," under which a party would face liability "only if it exercises 'actual control' over the administration of the plan." *Id.* at 844 (citation omitted). Adopting the "actual control" test, the *LifeCare* court held that (1) "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan", and (2) "if an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits." *Id.* at 844–45 (quotation omitted).

The Fifth Circuit went on to explain that "[n]either the statute nor caselaw directs that § 1132(a)(1)(B) should insulate an entity from liability merely for being a [third-party administrator]." *Id.* at 845 (citing *Harris Tr. and Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000)

(rejecting the argument that "absent a substantive provision of ERISA expressly imposing a duty upon a nonfiduciary party in interest, the nonfiduciary party may not be held liable under . . . one of ERISA's remedial provisions")).[6]

In *LifeCare*, the third-party administrator had authority to "process all claims presented for benefits under the Plan [and] acknowledged that it would not consult with [the plan administrator] to resolve a claim unless a 'gray area' presented itself." *Id.* (alterations omitted). Under these facts, the Fifth Circuit held that the third-party administrator was responsible for interpreting the terms of the plan to deny the plaintiffs benefits and thus had actual control over the process, unlike those cases "in which administrators were found not liable for performing only non-discretionary functions." *Id.*

Here, S&W asserts that Plaintiffs admit that S&W has only an "administrative role" and no "actual control" over the BSW Plan. (Dkt. #30 at 11). Not so. Plaintiffs have pointed to the BSW Plan's Summary Plan Description, which states that "[S&W has] discretionary authority to determine benefit amounts payable for claims, interpret plan provisions and coverage issues, resolve uncertainties, and make decisions concerning facts and circumstances related to plan claims." *See* (Dkt. #30 at 8–9). And Plaintiffs allege that S&W exercised this discretion by interpreting the

---

[6] At least six other circuits have likewise held that claims administrators may be sued as defendants under Section 1132(a). *See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015); *Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416, 438 (6th Cir. 2006); *Larson v. United Healthcare Ins. Co.,* 723 F.3d 905, 913–16 (7th Cir. 2013); *Brown v. J.B. Hunt Transp. Servs., Inc.,* 586 F.3d 1079, 1081, 1088 (8th Cir. 2009); *Cyr,* 642 F.3d at 1207; *Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1333–34 (11th Cir. 2006).

terms of the BSW Plan to deny Plaintiffs' claims for ASD therapy coverage and enforce ERISA-violating provisions in the plan. Thus, Plaintiffs have plausibly asserted that S&W exerted actual control over the benefits-claims process for the BSW Plan. Under similar circumstances in *LifeCare*, the Fifth Circuit determined that a third-party administrator with authority to process claims for benefits and to interpret plan terms had "actual control," even though its services were described as "ministerial in nature" in the relevant administrative contracts. *Id*.

S&W resists the conclusion that Plaintiffs have sufficiently alleged "actual control," asserting that this test requires an allegation that S&W exerted "total control" over the claims process. For this proposition, S&W cites *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248 (S.D.N.Y. 2018). S&W's reliance on *Gallagher* is misplaced. *Gallagher* concerns the application of Second Circuit precedent on the issue of control, particularly the Second Circuit's decision in *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015). In *New York State Psychiatric*, a decision issued two years after the Fifth Circuit's *LifeCare* decision, the Second Circuit held, for the first time, that ERISA does not limit liability solely to plan administrators but may include third-party administrators as well. *Id.* at 132. There, the third-party administrator appeared to have "total control" over the plan benefits denial process, "enjoy[ing] 'sole and absolute discretion' to deny benefits and make 'final and binding' decisions as to appeals of those denials." *Id*.

9

Given the circumstances, the Second Circuit held in *New York State Psychiatric* that it "need not . . . decide whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under [Section 1132(a)(1)(B)]." *Id.* at 132 n.5. *Gallagher* extended the Second Circuit's holding by deciding that a claims administrator that exercises something less than total control over the claims process is not an appropriate defendant under Section 1132(a)(1)(B). *Gallagher*, 339 F.Supp.3d at 254–55.

Put simply, *Gallagher*'s gloss on a Second Circuit decision does not alter the Fifth Circuit precedent in *LifeCare* that binds this Court. And, contrary to S&W's suggestion, the Second Circuit's description of "total control" in *New York State Psychiatric* does not equate to the description of "actual control" in *LifeCare*. *Compare New York State Psychiatric*, 798 F.3d at 132 (describing a third-party administrator as having "total control" when it had "sole and absolute discretion" to deny benefits and to make "final and binding" decisions as to appeals of those denials), *with LifeCare*, 703 F.3d at 845 (holding that a third-party administrator had "actual control" even where the third-party administrator would consult with plan administrators to resolve certain benefits claims and there was no indication that the third-party administrator had "final and binding" authority to decide all appeals of claim denials).

Further, at this stage of the proceedings, it appears that Plaintiffs' allegations would satisfy even the "total-control" standard urged by S&W. Plaintiffs allege that they "and other members of the class submitted voluntary second level appeals to the

BSW Administrative Committee, to which they never received a response . . . ." (Dkt. #26 ¶ 73). Thus, Plaintiffs allege that, in effect, S&W exerted total control over the BSW Plan's claims process because even if the BSW Plan provided a system for appealing claims decisions, those appeals were not heard. According to Plaintiffs, in practice S&W was the ultimate decision maker on BSW Plan claims. Further, the BSW Plan's Summary Plan Description states that such appeals to the plan administrator are voluntary and that participants have a right to sue in court after a "final" denial is issued by S&W. (Dkt. #49).

Given Plaintiffs' allegations that, under the terms of the BSW Plan, S&W had actual control over the claims process, and that in practice S&W exercised total control and ultimate authority over claims decisions, together with Plaintiffs' allegations that the BSW Plan itself violates ERISA, Plaintiffs have asserted sufficient factual allegations regarding S&W such that it is a proper defendant for Plaintiffs' Section 1132(a)(1)(B) claims as to the BSW Plan.

### ii.   Section 1132(a)(3)

While S&W does not specifically attack Plaintiffs' BSW Plan Parity Act claims as incorporated under Section 1132(a)(3), S&W broadly asserts that all of Plaintiffs' claims against it should be dismissed because Plaintiffs have not sufficiently alleged that S&W exercised "actual control" over the administration of the plans. However, while Section 1132(a)(1)(B) requires a showing of "actual control," courts have held that Section 1132(a)(3) does not.

11

Under Section 1132(a)(3), a participant, beneficiary, or fiduciary may bring a civil action to seek equitable relief for any act or practice that "violates any provision of this subchapter or the terms of the plan . . . ." *Id.* § 1132(a)(3). One such provision is Section 1185a, which requires group health plans that provide both medical and surgical benefits and mental health benefits to ensure that

> [T]he treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

*Id.* § 1185a(a)(3)(A)(ii).

Courts have held that Section 1132(a)(3) does not operate in the same manner as Section 1132(a)(1)(B). In *Easter v. Cayuga Medical Center at Ithaca Prepaid Health Plan*, a third-party claims administrator argued that it was not a proper defendant under either Section 1132(a)(1)(B) or Section 1132(a)(3). 217 F.Supp.3d 608, 630 (N.D.N.Y. 2016). The court held that, because the claims administrator did not have the requisite level of control over the administration of claims, the claims administrator was not a proper defendant under Section 1132(a)(1)(B). *Id.* However, the court also held that the claims administrator "failed to abide by ERISA claims procedures," and, although it could not be sued for money damages under Section 1132(a)(1)(B), it could be sued for "equitable relief for injuries caused by violations that [Section 1132] does not elsewhere adequately remedy." *Id.* at 639 (quotation omitted); *see also N.Y. State Psychiatric*, 798 F.3d at 134 (holding that a

claims administrator could be a proper defendant for a Parity Act claim as applied by Section 1132(a)(3)).

Thus, Plaintiffs' allegations of Parity Act violations, as incorporated by Section 1132(a)(3), do not require an accompanying allegation of actual control. Because, as stated above, Plaintiffs plead specific facts that the BSW Plan places limitations on mental-health benefits that it does not place on medical and surgical benefits, Plaintiffs have adequately stated a Section 1132(a)(3) claim under the BSW Plan.[7]

## B. Plaintiffs Adequately Allege Section 1132(a)(1)(B) and (a)(3) Claims under the Unnamed Plans.

### i. Standing

As a preliminary matter, in its reply brief, S&W raises the issue of standing for the first time, challenging Plaintiffs' standing to sue on behalf of the participants and beneficiaries of the Unnamed Plans. S&W has not properly raised the issue of standing in its motion, nor has it moved for dismissal for lack of subject-matter jurisdiction per Rule 12(b)(1). Nevertheless, the Court will examine Plaintiffs'

---

[7] The Court notes, however, that a question is raised as to whether Plaintiffs' Section 1132(a)(3) claim is duplicative of their Section 1132(a)(1)(B) claim. Section 1132(a)(3) supplies a "catchall" or "safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 1078, 134 L.Ed.2d 130 (1996). The Fifth Circuit has construed *Varity* as holding that "an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132." *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S. Ct. 1866, 179 L.Ed.2d 843 (2011); *see also Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018) (explaining that a claimant "whose injury creates a cause of action under [§ 1132(a)(1)(B)] may not proceed with a claim under [§ 1132(a)(3)]," and that, by examining the underlying injury, one can determine whether a given claim is duplicative) (quotation omitted)). S&W, however, has not sought dismissal of any of Plaintiffs' claims on this ground.

standing because it implicates subject-matter jurisdiction. *See MidCap Media Fin.,
L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (citing *Ruhrgas AG v.
Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)) (noting
that federal courts have an independent obligation to assess their jurisdiction "before
exercising the judicial power of the United States").

To establish standing, Plaintiffs must show that they "have suffered an injury
in fact—an invasion of a legally protected interest which is (a) concrete and
particularized and (b) actual or imminent, not conjectural or hypothetical . . . ."
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351
(1992) (cleaned up). Plaintiffs must also show that there is "a causal connection
between the injury and the conduct complained of . . . ." *Id.* Finally, Plaintiffs must
show that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will
be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). In class actions,
Plaintiffs "must allege and show that they personally have been injured, not that
injury has been suffered by other, unidentified members of the class to which they
belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502,
95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

Here, Plaintiffs have alleged an injury in fact and S&W's causation of that
injury, namely S&W's denial of coverage for ASD therapy sessions in violation of
ERISA. Plaintiffs seek both damages and equitable relief, which, if adjudged in their
favor, would redress their alleged past and future injuries. Further, Plaintiffs allege
that S&W's purported ERISA violations have injured Plaintiffs personally—not

merely that those violations have injured the putative class members. Thus, Plaintiffs have shown that they have standing to bring claims on behalf of putative class members concerning the BSW Plan, which S&W does not contest.

In its reply supporting dismissal, S&W suggests that Plaintiffs lack standing to assert claims on behalf of participants or beneficiaries of the Unnamed Plans because Plaintiffs themselves are not participants or beneficiaries of the Unnamed Plans. But S&W has not cited any authority—and the Court is unaware of any authority—stating that, for purposes of standing, class-action plaintiffs must assert that they and the putative class members suffered an injury under the same ERISA-covered benefits plan. To have standing as class representatives, the named Plaintiffs must merely "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* Plaintiffs have met this requirement by alleging that S&W's purported ERISA violations injured them as well as their fellow class members. Thus, Plaintiffs have sufficiently established standing, at least at this stage, to sue on behalf of the putative class.

### ii.   Section 1132(a)(1)(B)

S&W also argues that Plaintiffs have not adequately alleged that S&W exercised "actual control" over the administration of the Unnamed Plans for a Section 1132(a)(1)(B) claim. The Court disagrees.

In regard to S&W's "actual control" of the claims process under the BSW Plan, Plaintiffs allege that S&W had "discretionary authority to determine benefit amounts

payable for claims, interpret plan provisions and coverage issues, resolve uncertainties, and make decisions concerning facts and circumstances related to plan claims." (Dkt. #26 ¶ 41). Essentially the same allegation is made against S&W as to the Unnamed Plans. Plaintiffs maintain that S&W administered claims under the Unnamed Plans "in a similar manner" to the BSW Plan. (Dkt. #26 ¶ 68). More specifically, Plaintiffs allege that:

> [S&W] has administered claims, acted as administrator for other self-funded plans with the aforementioned or similar provisions and limitations, and has similarly limited and/or denied coverage for ABA, speech, physical, and occupational therapy pursuant to similar visit limits in plans/SPDs for other self-funded plans.

(Dkt. #26 ¶ 50). Plaintiffs have further asserted that they are unable to provide more specific information concerning S&W's duties and authority in administering the Unnamed Plans because S&W has refused to respond to discovery requests seeking to obtain this information. S&W does not dispute that it has refused to respond to discovery from Plaintiffs concerning the Unnamed Plans.

Under these circumstances Plaintiffs find themselves in a "Catch-22." S&W has argued that Plaintiffs' allegations as to the Unnamed Plans are fatally vague because they "contain[] no reference to the terms of any Unidentified Plan," (Dkt. #30 at 13), but more specific information on S&W's role in administering the Unnamed Plans is in S&W's possession and S&W apparently refuses to respond to discovery from Plaintiffs requesting this information.

The Court finds the Fifth Circuit's holding in *Innova Hospital San Antonio, Ltd. Partnership v. Blue Cross* to be instructive here. 892 F.3d 719, 727 (5th Cir. 2018). In *Innova*, ERISA-plan beneficiaries assigned their benefits to a hospital that

had provided the beneficiaries with medical services. *Id.* at 724. When the defendant insurers failed to pay or underpaid for benefits allegedly covered under the beneficiaries' plans, the hospital sued the insurers under Section 1132(a)(1)(B). *Id.* However, the actual plans themselves were in the insurers' possession, not the hospital's. *Id.* The hospital made multiple attempts to obtain the plan documents from the insurers through the discovery process, but to no avail. *Id.* Thus, lacking possession of the plans, the hospital's complaint "did not identify specific plans or specific plan language applicable to each claim." *Id.* "In response, the Insurers moved to dismiss for failure to state a claim, arguing that the Hospital needed to identify the provisions in specific plan documents that the Insurers allegedly breached." *Id.*

The district court agreed with defendant insurers, dismissing the hospital's Section 1132(a)(1)(B) claims and giving the hospital a chance to replead. *Id.* Following this first dismissal, the hospital again sought the plans through discovery, but, relying on the dismissal order, the insurers again refused to provide the requested plans. *Id.* at 725. Thus, the hospital's repleaded complaint likewise lacked any actual plan language. *Id.* The district court dismissed the hospital's ERISA claims again, concluding that they were insufficient because they did not identify the specific plan provisions at issue. *Id.*

On appeal, the hospital argued that the district court had created a "heightened pleading standard" by requiring the hospital "to plead information that it did not have and could not access without the Insurers' cooperation." *Id.* at 727. The Fifth Circuit, reversing the district court, agreed, stating that "[s]imply put,

ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be extremely difficult for them to access such plan provisions." *Id.* at 728 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail . . . ."); *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d. Cir. 2013); *Garayalde-Rios v. Municipality of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014) (quoting *Braden* for the proposition that a "complaint should be read in its entirety and 'not parsed piece by piece to determine whether each allegation, in isolation, is plausible'"); *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ("[A]n ERISA Plaintiff . . . does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.")).

The circumstances of *Innova* are analogous to the present case, although, here, Plaintiffs have been unable to obtain discovery of specific information on Unnamed Plans relevant to Plaintiffs' class allegations. Construing the Amended Complaint liberally, reading it in its entirety and in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs' allegation that S&W has administered the Unnamed Plans "in a similar manner" to the BSW Plan—that is, with discretionary and interpretive authority—is sufficient to allege that S&W exerts actual control over the Unnamed Plans. Requiring more from Plaintiffs at this stage of the litigation, and in

18

light of the difficulties experienced by Plaintiffs in accessing further information on the Unnamed Plans, would be improper under circuit precedent.[8]

### iii.  Section 1132(a)(3)

S&W contends that Plaintiffs have not adequately pleaded a Parity Act violation under the Unnamed Plans, as incorporated under Section 1132(a)(3). Specifically, S&W attacks one element of that claim: that Plaintiffs have not pleaded "a lack of parity between mental health benefits and medical/surgical benefits." (Dkt. #30 at 16). This argument also fails.

Section 1185a mandates that the treatment limitations on mental-health benefits—including annual- and lifetime-visit limits—be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . ." 29 U.S.C. § 1185a(a)(3)(A)(ii). Section 1185a also mandates that there be "no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." *Id.*

Concerning the Unnamed Plans, Plaintiffs allege that:

> Upon information and belief, Defendant Scott & White Health Plan administers ASD benefits for other self-funded plans governed by ERISA that contain or include similar visit limits (and plan designs for other self-funded plans) on ABA, speech, physical, and occupational therapy. Scott & White Health Plan only allows ABA for the treatment of ASD and, as occurred in relationship to the BSW Plan, Scott and White Health Plan administers other plans with similar visit limitations on speech, physical, and occupational therapy even when these services

---

[8] The Court expects that S&W will adhere to the Fifth Circuit's guidance in *Innova* that "[c]ounsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." 892 F.3d at 729–30 n.9.

> are provided to treat ASD. Thus, Scott & White Health Plan has similarly caused members of the class who are participants and beneficiaries under other self-funded plans that it administers to pay privately for ASD services and/or obtain additional or alternative insurance or health benefits to cover ABA, speech, physical, and occupational therapy to treat ASD on an unlimited basis without reference to visit limits, and such additional/alternative plans have subsequently covered and allowed such ABA, speech, physical, and occupational therapy claims.

(Dkt. #26 at 28). Plaintiffs have alleged that the Unnamed Plans and the BSW Plan include similar visits on ASD therapy—limits that do not exist for medical and surgical benefits under the plans. Because Plaintiffs have alleged that visit limits do not apply to medical benefits under the BSW Plan and because Plaintiffs have alleged that the Unnamed Plans contain similarly improper visit limits, Plaintiffs have adequately pleaded that the plans contain separate treatment limitations on ASD benefits in violation of ERISA. Again, the Fifth Circuit has held that precise plan provisions need not be alleged where those plan provisions are uniquely in the defendant's possession and defendant has not produced them in discovery. *Innova*, 892 F.3d at 728–29.

For these reasons, Plaintiffs have sufficiently alleged violations of the Parity Act under Section 1132(a)(3) as to the Unnamed Plans.[9]

## C. Plaintiffs' Rule 23 Allegations are Sufficient at the Dismissal Stage.

Finally, S&W contends that Plaintiffs' class allegations as to the Unnamed plans must be dismissed because they purportedly fail to meet two threshold requirements under Rule 23. According to S&W, Plaintiffs' allegations as to the

---

[9] As noted herein, *see supra* n.5, Plaintiffs' Section 1132(a)(3) claims as to both the BSW Plan and the Unnamed Plans may be duplicative of their Section 1132(a)(1)(B) claim.

Unnamed Plans (1) fail to allege an ascertainable class, and (2) fail to adequately allege the commonality, typicality, and adequacy requirements of Rule 23(a). The Court concludes that, as to the Unnamed Plans, Plaintiffs have alleged an ascertainable class and have sufficiently alleged the requirements of Rule 23(a) to survive dismissal at this stage of the proceedings.

### i.   Plaintiffs have alleged an ascertainable class.

The Fifth Circuit has explained that, "'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007) (quoting *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John*, 501 F.3d at 445. However, "the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F.App'x 164, 168 (5th Cir. 2015) (per curiam) (quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)).

Plaintiffs' allegations as to the Unnamed Plans are sufficient to meet this standard. Plaintiffs' Amended Complaint defines the putative class as follows:

> [A]ll participants or beneficiaries under the BSW Plan and self-funded, ERISA-governed benefit plans administered by Defendant [S&W]:
>
> a.  who were diagnosed with ASD;
>
> b.  who have received or should have received coverage for ABA, speech, physical, and occupational therapy;

    c.   are or were eligible to be enrolled in the BSW Plan, which is governed by ERISA and [the Parity Act], and which has more than 47,000 employees;

    d.   are or were eligible to be enrolled in a self-funded benefit plan, which cover[s] medical and mental health services throughout Texas, administered by [S&W], and [is] governed by ERISA and [the Parity Act];

    e.   in which the plan/SPD by its stated terms and/or as administered by [S&W] impose[s] a sixty-visit lifetime/annual limit or similar visit limit or exclusions on ABA, or similar annual limits on speech, physical and occupational therapy.

(Dkt. #26 ¶ 84). As to the Unnamed Plans, the proposed class definition encompasses participants or beneficiaries of self-funded, ERISA-governed benefit plans administered by S&W who were diagnosed with ASD, entitled to coverage for ABA and related therapies, and subject to lifetime and/or annual visit limitations on such treatments under the plan as written and/or interpreted by S&W.

To be sure, Plaintiffs' proposed class definition is not as precise as may ultimately be necessary. For example, the definition does not include any temporal limitations, and a geographic limitation to Texas is referenced but not clear. However, the definition is sufficient to show that, at some stage of the proceeding, the Court could ascertain the proposed class members.

Nonetheless, S&W argues that the ascertainability requirement is not met because "not a single Named Plaintiff is a beneficiary of [any of the Unnamed Plans]." (Dkt. #30 at 16). It is true that the named Plaintiffs must allege that they "possess the same interest and suffer the same injury as the class members," and it is not enough to merely allege that each class member "suffered a violation of the same

22

provision" of a statute. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–50, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (internal quotation marks omitted).[10]

But Plaintiffs have not merely alleged that each class member "suffered a violation of the same provision" of ERISA. *Id.* Rather, Plaintiffs have alleged that the class members have all suffered the same injury—S&W's enforcing visit limits on ASD therapy that are not enforced on medical benefits, in violation of ERISA and the Parity Act. S&W has not directed the Court to any case law or other authority dictating that the "same injury" in this context means an injury resulting from the same *benefits plan*. Thus, on the face of the pleadings, Plaintiffs have alleged that all class members, including the named Plaintiffs, have plausibly suffered the same injury.

S&W also complains that, although Plaintiffs have identified the sixty-visit lifetime/annual limit as a violation of the Parity Act under the BSW Plan, they have alleged only "similar" limitations in the Unnamed Plans, without specifying the precise nature of such limitations. (Dkt. #30 at 16). At this stage of proceedings, however, Plaintiffs' allegations are sufficient for the ascertainability inquiry because the class definition identifies treatment limitations in the Unnamed Plans that are imposed on therapies for ASD and that operate similarly to the lifetime/annual visit limits described in the BSW Plan.

---

[10] The *Dukes* Court noted, for example, that when defining a class for violations of Title VII, merely alleging that all members of the class suffered Title VII violations will not suffice, as that statute "can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company." *Dukes*, 564 U.S. at 350.

23

Likewise, S&W's complaint that the class definition currently includes individuals who "should have received coverage for ABA, speech, physical, and occupational therapy," and that this description is too vague, is unavailing. (Dkt. #30 at 16). The class definition points to individuals diagnosed with ASD who would meet the terms for coverage of the referenced ASD therapies under the Unnamed Plans. Again, although the class definition may likely require refinement, the Court cannot conclude that the current class definition shows that class members could not be identified at any stage of this case.

For these reasons, Plaintiffs have sufficiently alleged an ascertainable class to survive S&W's dismissal motion.

### ii.    Plaintiffs have sufficiently alleged that they meet Rule 23(a)'s requirements.

S&W argues that Plaintiffs fail to adequately allege the commonality, typicality, and adequacy requirements of Rule 23(a). The Court disagrees and concludes that Plaintiffs' Rule 23 allegations survive the Rule 12(b)(6) dismissal stage.

First, S&W argues that Plaintiffs fail to adequately allege commonality among the putative class members. Rule 23 requires that a plaintiff show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Specifically, a plaintiff must identify a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. S&W contends that, because the BSW Plan and the various

Unnamed Plans are different, the putative class members' injuries "vary significantly." (Dkt. #30 at 22). Specifically, regarding the equitable relief Plaintiffs seek under Section 1132(a)(3), S&W also asserts that "[w]ith multiple ERISA Plans at issue—each with different terms, different provisions, and different limits . . . there will be no common answers." (Dkt. #30 at 22). Plaintiffs counter that, even though the relief sought may vary somewhat for various class members depending on the language of their respective plans, an allegation that S&W administered ERISA-violating limits on ASD treatments on all class members is an allegation of "the same injury" for purposes of Rule 23.

At the 12(b)(6) dismissal stage, the Court need not determine whether Plaintiffs will ultimately be able to "prove that there are *in fact* . . . common questions of law or fact," *Dukes*, 564 U.S. at 350, as that burden, which is more than a "mere pleading standard," is for Plaintiffs to meet at the class-certification stage. Here, the "mere pleading standard" is all Plaintiffs must meet. As discussed above, Plaintiffs allege that S&W injured participants and beneficiaries of the BSW Plan and the Unnamed Plans by administering unequal treatment limitations in violation of ERISA and the Parity Act. The Court concludes that, at least at the dismissal stage, these allegations adequately state several common questions that are central to the validity of all class members' claims, including: (1) whether each class member's ERISA-governed plan contains unequal treatment limitations for ASD treatments;

(2) whether S&W administered claims according to these unequal treatment limitations; and (3) whether each class member was injured by S&W's actions.[11]

Second, S&W argues that Plaintiffs have failed to adequately allege that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). S&W specifically contends that, because the Unnamed Plans may differ from the BSW Plan and from each other, "it is uncertain that *all* class members were in fact subject to the uniform application of illegal benefit plan terms, as Plaintiffs claim." (Dkt. #30 at 24). This is not the standard for Rule 23's typicality requirement at the dismissal stage or otherwise. Instead, as S&W notes, "[t]he typicality inquiry rests . . . on the similarity of legal and remedial theories behind [Plaintiffs'] claims." *Ibe v. Jones*, 836 F.3d 516, 528–29 (5th Cir. 2016) (quotation omitted).

Here, the legal theory behind the named Plaintiffs' claims—that the BSW Plan's limitations on ASD treatments violate ERISA and the Parity Act—is the same one underpinning Plaintiffs' class allegations for the Unnamed Plans. The Court is not persuaded that the *potentially* differing terms of the various plans, which the Court does not have the benefit of comparing at this time, render Plaintiffs' typicality pleading insufficient for purposes of 12(b)(6) dismissal.

---

[11] The Court rejects S&W's assertion that, because class members may seek different forms of relief or have suffered damages for varying reasons, Plaintiffs fail the commonality requirement. *See In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (holding that the common contention under Rule 23 "need not relate specifically to the damages component of the class members' claims").

Finally, S&W argues that Plaintiffs have not adequately pleaded that the named Plaintiffs "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). As S&W states, assessing adequacy requires the Court to evaluate "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (brackets and citation omitted). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Id.* at 480.

S&W contends that, because the suit involves multiple ERISA plans, conflicts may arise. Specifically, S&W asks,

> What if the BSW [Plan] changes its terms to comply with the Parity Act but the Un[named] Plans do not? . . . Or what if [the] BSW [Plan] settles all claims concerning its alleged liability? How will the Named Plaintiffs adequately represent the class if the only remaining claims concern Un[named] Plans?

(Dkt. #30 at 25). But S&W's speculation that conflicts "may arise" impliedly concedes that no such conflicts exist at this time so as to defeat Plaintiffs' adequacy allegations. While at the class-certification stage, Plaintiffs will need to be ready to "prove that there are *in fact*" no conflicts between the named Plaintiffs and the class members, *Dukes*, 564 U.S. at 350, at the dismissal stage, it is enough that the Amended Complaint on its face shows that Plaintiffs will adequately protect the interests of the class and that there is no patent intra-class conflict.

Because Plaintiffs have adequately pleaded that an ascertainable class, as well as allegations meeting the requirements of Rule 23(a), S&W's motion to dismiss Plaintiffs' class claims under Rule 12(b)(6) fails.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that S&W's Motion to Dismiss, (Dkt. #30), is **DENIED**.

**So ORDERED and SIGNED this 23rd day of November, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE