UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

C.C. & L.C., individually and as     §
next friends to L.L.C., ET AL.        §
                                  §
v.                               §       CIVIL NO. 4:18-CV-828-SDJ
                                  §
BAYLOR SCOTT & WHITE       §
HEALTH, ET AL.              §

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement, Award of Attorney Fees and Litigation Costs, and Incentive Awards. (Dkt. #102). Also before the Court is Plaintiffs' Unopposed Motion for Approval of Attorney Fees, Litigation Costs and Case Contribution Awards. (Dkt. #97). The Court, having considered the motions, the record, and the applicable law, **GRANTS** both motions.

## I. BACKGROUND

On January 6, 2022, the Court preliminarily approved a proposed settlement agreement between Plaintiffs C.C. and L.C., individually and as next friend to L.L.C.; D.C. and H.C., individually and as next friend to O.C.; C.S. ("Ca.S."), individually and as next friend to J.A., Jr.; and S.M. and C.S. ("Ch.S."), individually and as next friend to E.M., each on their own behalf and on behalf of the settlement class, and Defendants Baylor Scott & White Health; Baylor Scott & White Health and Welfare Benefits Plan (the "Plan"); Scott & White Health Plan; and Baylor Scott & White Holdings. (Dkt. #94). The settlement agreement provides prospective coverage of medically necessary Applied Behavior Analysis ("ABA") services and speech,

1

occupational, and physical therapies to treat Autism ("NDT") and establishes a claims process for reimbursement of previously uncovered ABA and NDT services.

The settlement agreement establishes a Qualified Settlement Fund that is funded by Defendants and replenished when requested by the claims processor. Under the terms of the settlement agreement, this fund will be used to pay retrospective claims for unreimbursed ABA and NDT services during the class period, attorney's fees and litigation costs, case contribution awards, costs of claims administration, and taxes. After these payments are made, any residual funds will be returned to Defendants. The settlement agreement provides that an independent claims administrator will process claims; it also establishes an appeal process in the event of a dispute over whether a claim should be paid.

The Court directed Defendants to transmit the names and addresses of the class notice recipients located after a reasonable search to the claims processor within sixty days of the order preliminarily approving the settlement. (Dkt. #94 ¶ 4). In that order, the Court also directed the claims processor to mail the class notice and claim form materials, (Dkt. #87-3), to the class notice recipients within fourteen days of receiving the names and addresses of class notice recipients from Defendants. (Dkt. #94 ¶ 5). By February 3, 2022, the claims processor emailed and mailed all class notices and claim form materials in accordance with the class notice procedures. (Dkt. #102-2 ¶ 5). Within thirty days of the order preliminarily approving the settlement agreement, class counsel established a settlement web page that contained the class notice, the claim form materials, and key filings in the litigation,

including Plaintiffs' Unopposed Motion for Approval of Attorney Fees, Litigation Costs and Case Contribution Awards. (Dkt. #102-5 ¶ 2); *see also* http://www.syshlaw.com/bswhsettlement.

Pursuant to the Court's order, (Dkt. #94), class members who wished to comment on or object to the proposed settlement agreement were required to do so by June 23, 2022. Class members were informed of their rights and of this deadline in the notices that were mailed to them and via links on class counsel's website. Defendants also mailed the required Class Action Fairness Act ("CAFA") notice on June 24, 2022. (Dkt. #101); *accord* 28 U.S.C. § 1715(b).

The Court held a fairness hearing on July 14, 2022, to determine whether the proposed settlement agreement is fair, reasonable, adequate. (Dkt. #104). No class members submitted comments or objected to the settlement agreement. Nor did anyone object to the requested attorney's fees, litigation costs, or case contribution awards. (Dkt. #102-2 ¶ 12). And no objections were received from any governmental entity notified pursuant to the CAFA notice. (Dkt. #105) (Defendants' Notice Regarding Lack of Objection from Attorneys General), *see* 28 U.S.C. § 1715(d).

Plaintiffs now move for final approval of the settlement agreement and for approval of the agreed upon attorney's fees, litigation costs, and incentive awards.

## II. Legal Standard

Class settlements must comply with Federal Rule of Civil Procedure 23(e). Under Rule 23(e), a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e) requires

notice to the proposed class members before the court can finally approve a class settlement. To send notice, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).

Before 2018, the Fifth Circuit required district courts considering whether a class settlement was fair, reasonable, and adequate under Rule 23(e)(2) to apply the six *Reed* factors: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) the plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). But in 2018, Rule 23(e)(2) was amended to provide uniform guidance to courts evaluating class settlements. Amended Rule 23(e)(2) provides that a "court may approve [a settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including

timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

The Advisory Committee notes to the 2018 amendments indicate that the changes to the rule are meant to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal" rather than "displace any factor" sanctioned by the circuit courts. FED. R. CIV. P. 23(e)(2) Advisory Committee's Note to 2018 Amendments. Because the Rule 23 and *Reed* factors overlap, "courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris County*, No. 16-CV-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019); *see also, e.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F.Supp.3d 456, 485 (E.D. La. 2020) ("[T]he Court will consider the Rule 23 requirements as informed by the *Reed* factors.").

### III. DISCUSSION

### A. The Rule 23(e)(2) and *Reed* Factors

The factors enumerated in Rule 23(e) and those identified by the Fifth Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement support finally approving the settlement here.

#### i. Adequate Class Representation

The record shows that the class representatives and class counsel have ably and diligently represented the class, in a case filled with legal and factual

5

complexities. Counsel was competent and zealously litigated on behalf of the class. And, based on the evidence presented, the named plaintiffs do not have conflicts of interest with the putative class members.

### ii. Arm's Length Transaction and No Fraud or Collusion

The Court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). Here, the class settlement was the product of hard-fought negotiations conducted at arm's length. (Dkt. #84-14 ¶ 12). The parties participated in two unsuccessful mediation sessions, after which they continued to negotiate and exchanged multiple drafts of the agreement before reaching an appropriate settlement. (Dkt. #84-14 ¶¶ 12, 14); *see In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F.Supp.2d 891, 931 (E.D. La. 2012) (explaining that use of a mediator "further weigh[s] in favor of a finding that the Settlement was fairly negotiated"). The record demonstrates the zealous advocacy that all sides deployed, and there is no indication that the settlement is the product of fraud or collusion.

### iii. Adequate Relief

As the Fifth Circuit has explained, settling "avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). So when "the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec.*

6

*Breach Litig.*, 851 F.Supp.2d 1040, 1064 (S.D. Tex. 2012) (quoting *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 651 (N.D. Tex. 2010)).

Although the class here contends that it had a strong likelihood of success on the merits, the key legal issues in the case had not been adjudicated, such that there was risk in proceeding with the litigation. But in settlement, a clear process was established for undisputed prospective relief and speedy reimbursement for treatment sought during the class period whether or not class members had previously submitted claims for such treatment. Indeed, this relief likely exceeds what Plaintiffs could have obtained at trial. The settlement relief, discussed below, is easily found adequate in these circumstances. This factor favors approval.

### iv. Stage of Proceedings and Amount of Discovery

The key issue under this factor is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. A court can approve a settlement "even if the parties have not conducted much formal discovery." *Klein*, 705 F.Supp.2d at 653 (citation omitted); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (agreeing that "formal discovery is not a prerequisite to approving a settlement as reasonable"). The sufficiency of information does not turn solely "on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

Accordingly, a court "should consider all information which has been available to the parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007).

Here, the parties have engaged in meaningful discovery. This litigation settled only after extensive written document production and after Plaintiffs took the Rule 30(b)(6) depositions of Defendants Scott & White Health Plan and the Plan. Following this discovery, class counsel drew on their previous experience in similar ERISA class-action litigation to determine the settlement's adequacy in relation to the probability of success on the merits if litigation continued. (Dkt. #84-14 ¶ 14). Because the parties have shown they possessed sufficient information to gauge the strengths and weaknesses of their respective claims and defenses, this factor favors approval of the proposed settlement.

### v. Probability of Success on the Merits

Without a showing of fraud or collusion, the probability of success on the merits is the most important *Reed* factor. *Smith v. Crystian*, 91 F.App'x. 952, 955 n.3 (5th Cir. 2004) (per curiam) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). When examining the likelihood of success, a court "must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172). At the same time, the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (cleaned up).

Plaintiffs survived Defendants' motion to dismiss and had a strong case on the merits. But there remained a substantial risk for all parties in proceeding to trial. In light of that risk, settlement made sense—particularly because the settlement agreement provides for payments of all claims and costs. The settlement agreement provides prospective, ongoing coverage for ABA and NDT services through December 31, 2024, and provides back benefits to Plaintiffs and the class stretching back to January 1, 2015. Again, this relief likely exceeds what Plaintiffs could have obtained at trial. This factor therefore favors approving the settlement agreement.

### vi. Range and Certainty of Recovery

The next factor requires a district court to "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981)). "The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010).

As the analysis of the fourth *Reed* factor (probability of success on the merits) shows, the settlement here is a complete victory for Plaintiffs and the class. Class members will be able to continue to obtain coverage of medically necessary ABA and NDT services in the future, and they will receive full reimbursement for their

uncovered ABA and NDT therapies, subject to co-payments and deductibles. Not only have class members obtained complete prospective and retrospective relief of their claims but also payment of attorney's fees and costs. Class members did not compromise to obtain this outcome, which indicates that the settlement is fair, reasonable, and adequate.

### vii. Opinions of Class Participants and Absent Class Members

Class counsel and Plaintiffs all agree to the settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."). And no class member has objected, which "can be viewed as indicative of the adequacy of the settlement." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (quotation omitted). This final *Reed* factor favors approving the proposed settlement.

### viii. Equitable Treatment of Class Members

Finally, the equitable-treatment factor is "easily met [here] as each class member, save the Class representative[s], will receive the same amount." *Hays v. Eaton Grp. Att'ys, LLC*, No. 17-CV-88, 2019 WL 427331, at *13 (M.D. La. Feb. 4, 2019). So this factor also supports approving the settlement.

*          *          *

In sum, having considered all of the relevant factors, the Court concludes that the proposed settlement is fair, reasonable, and adequate under Rule 23(e). Additionally, the Court finds that the parties provided the class with adequate notice

and satisfied due process in connection with the distribution of the notice. The terms of the settlement are therefore approved.

## B. Attorney's Fees

The Court next considers class counsel's request for attorney's fees. Class counsel requests that the Court award $416,675.55 in attorney's fees. (Dkt. #97 at 2–5). Defendants have agreed to pay this amount under the settlement agreement. Notably, class members will not be responsible for payment of these fees.

Rule 23(h) authorizes a district court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The "claim for an award must be made by motion under Rule 54(d)(2)," and a "class member, or a party from whom payment is sought, may object." FED. R. CIV. P. 23(h)(1)–(2). In addition, the court "must find the facts and state its legal conclusions under Rule 52(a)." FED. R. CIV. P. 23(h)(3).

Litigants are encouraged to resolve fee issues by agreement, but a court is not bound by the parties' agreement as to the amount of attorney's fees. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). The court must carefully review a proposed fee award to ensure reasonableness. *Id.* This scrutiny is necessary to guard "against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (quotation omitted).

Consistent with Plaintiffs' motion, the Court will use the lodestar method to assess the reasonableness of the requested attorney's fees. Under the lodestar method, a court "must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney." *Id.* "The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Id.*

After calculating the lodestar, the court must cross-check its analysis with the *Johnson* factors. *Id.*; *see also Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (holding that by summarily approving attorney's fees presented in an unopposed settlement agreement, the district court "abdicated its responsibility to assess the reasonableness of the [ ] fees proposed under a settlement of a class action"). The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Union Asset Mgmt.*, 669 F.3d at 642 n.25 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

The court "must explain how each of the *Johnson* factors affects its award." *Sulfur*, 517 F.3d at 228. But the explanation "need not be meticulously detailed to survive appellate review." *Id.* (quoting *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823

(5th Cir. 1996)). After reviewing the twelve factors, "the court may then apply a multiplier to the lodestar, adjusting the lodestar either upward or downward." *Strong*, 137 F.3d at 850. There is a "strong presumption" that the lodestar number is reasonable. *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n.17 (5th Cir. 2013).

### i. Lodestar

Class counsel here requests $416,675.55 in attorney's fees. Based on the records submitted in support of the motion, class counsel spent approximately 980.35 hours prosecuting this case. The Harris Firm, P.C., billed 106.9 hours; Mack Rosenberg Law LLC (formerly Bouer Law LLC) billed 667.75 hours; and Sirianni Youtz Spoonemore Hamburger PLLC billed 205.7 hours. *See* (Dkt. #97-10). And the attorneys working on this case had billable rates ranging from $400 to $715. (Dkt. #97-9 ¶ 2). Class counsel asserts that, as of June 2, 2022, the total lodestar fee is $470,873.50. (Dkt. #97-9 ¶ 2). But based on class counsels' redacted fee ledgers, the lodestar appears to be $458,888.50. *See* (Dkt. #97-10 (showing a billing balance of (1) $42,760.00 for the Harris Firm, P.C.; (2) $269,053.00 for Bouer Law LLC; and (3) $147,075.50 for Sirianni Youtz Spoonemore Hamburger PLLC)). In any event, this discrepancy is immaterial because class counsel requests only $416,675.55 in attorney's fees—an amount significantly below the lodestar.

The number of hours class counsel worked to prosecute this litigation is reasonable given the duration and complexity of the case. As discussed above, the case proceeded through discovery until, following the Rule 30(b)(6) depositions of Defendants, the parties reached a resolution. (Dkt. #84-14 ¶¶ 12–14). The case

involved complex issues relating to ERISA, the Mental Health Parity Act, and class action procedures. And, as discussed above, the results obtained in settlement were complete—full back benefits to affected class members along with years of prospective coverage. These factors all point to the reasonableness of the hours expended in pursuit of this outcome.

Class counsel also presented evidence that the hourly rates used were reasonable. "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). The billable rates here, which are class counsel's current rates charged for new clients, range from $400 to $715. (Dkt. #97-9 ¶ 2). There is evidence that these rates are within market range for the legal community in the Eastern District of Texas, (Dkt. #97-8 ¶¶ 2–4), and similar rates for this type of litigation have been approved in other cases nationally, *see, e.g.*, *Wit v. United Behav. Health*, 578 F.Supp.3d 1060, 1078–80 (N.D. Cal. 2022) (approving attorney rates ranging from $625–$1,145 per hour in complex ERISA class action regarding access to mental health benefits); *Lehman v. Nelson*, No. C13-1835RSM, 2018 WL 3727600, at *1 (W.D. Wash. Aug. 6, 2018) (approving rates ranging from $385 to $665 in ERISA litigation). And the use of these rates is not contested.

When determining the reasonableness of hourly rates, courts also "consider the experience, reputation and ability of the attorney and the skill required by the attorneys." *King v. United SA Fed. Credit Union*, 744 F.Supp.2d 607, 612 (W.D. Tex. 2010); *see also Johnson*, 488 F.2d at 719 ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience."). Class action litigation over violations of the Mental Health Parity Act and ERISA is a complex area of litigation that requires knowledgeable and experienced litigators to succeed. (Dkt. #97-9 ¶ 2); (Dkt. #97-8 ¶ 4). Class counsel in this case all have twenty-five years or more of experience in this area. *See* (Dkt. #97-9 ¶ 2). What's more, consistent with the settlement agreement, class counsel seeks only $416,675.55 of the $458,888.50 lodestar fee. This voluntary downward adjustment from the lodestar amount provides additional support for finding that the requested fees are reasonable. *See In re Chesapeake Energy Corp.*, 567 F.Supp.3d 754, 790 (S.D. Tex. 2021).

### ii. *Johnson* Factors

The *Johnson* factors support the reasonableness of the requested fee award and do not counsel in favor of an adjustment. 488 F.2d at 717–19. Factors (1), (2), (5), and (9)—the time and labor required; novel and difficulty of the issues; the customary fee charged for services in the relevant community; and the experience, reputation, and ability of class counsel—are already subsumed into the lodestar analysis above and favor the requested fees.

The third factor is the skill required to prosecute the claims. This factor is satisfied when "counsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution." *King*, 744 F.Supp.2d at 614 (quoting *Di Giacomo v. Plains All Am. Pipeline*, Nos. H-99-4137, H-99-4212, 2001 WL 34633373, at *12 (S.D. Tex. Dec. 19, 2001)). Class counsel here obtained excellent results—full back benefits to affected class members along with years of prospective coverage—after they "engaged in formal discovery" and "survived [a] dispositive motion[]." *Chesapeake Energy Corp.*, 567 F.Supp.3d at 791. And they did all this while facing "attorneys with similarly excellent credentials and experience." *Id.*; *see also Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Thus, this factor favors the requested attorney's fees.

The fourth *Johnson* factor asks whether litigating this case precluded class counsel from other employment. Class counsel devoted over 980 hours to prosecuting this case. These hours, while spread over nearly four years and across several law firms, precluded counsel for the class from other employment. So this factor also supports the requested fees.

Under the sixth factor, the Court evaluates class counsel's fee arrangement. Although it appears class counsel worked on a contingent basis, *see* (Dkt. #97 at 5),

the nature of the arrangement is not specified in class counsel's motion for attorney's fees nor clear based on the evidence presented in support of the motion. Thus, the Court concludes that this factor is neutral.

The seventh factor looks to the time limitations the circumstances imposed. This factor is not relevant here because the record does not show that any time limitations were imposed. *Erica P. John Fund*, 2018 WL 1942227, at *11 ("This factor does not apply in this case because there is no indication that Lead Plaintiff imposed any time limits in the prosecution of this case."); *see also In re Combustion, Inc.*, 968 F.Supp. 1116, 1135 (W.D.La. 1997) ("Even though it is apparent that the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.").

The eighth factor, the amount involved and the results obtained, is "the most critical . . . in determining the reasonableness of a fee award." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Class counsel achieved excellent results for their clients. The class members will receive prospective continued coverage of ABA and NDT therapy without treatment or financial limitations through December 31, 2024, and 100% reimbursement of class members' valid and approved claims for out-of-pocket expenses related to uncovered services. The injunctive relief, in particular, is significant. According to class counsel, the value of prospective relief is likely to be greater for a single year than all of the claims class members are likely to submit for retrospective compensation. (Dkt. #97-9 at ¶ 3). This factor supports the requested fee award.

The tenth factor evaluates the "undesirability" of the case. *Johnson*, 488 F.2d at 717–19. Class actions carry "elevated risks" that can make them undesirable. *Schwartz*, 2005 WL 3148350, at *33. Litigating an expensive case involving a "well-financed corporate [defendant] on a contingent fee" can also make a case undesirable. *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *12 (quotation omitted). This factor also supports the requested attorney's fees.

The eleventh factor looks to the length and nature of the relationship between class counsel and their clients. Class counsel ably represented the named class representatives in this litigation for nearly four years. The proposed settlement, a result of class counsel's advocacy, will greatly benefit class members that require ABA or NDT services and their families.

The final factor is how the requested award compares to awards in similar cases. *Johnson*, 488 F.2d at 717–19. Class counsel has not addressed this factor in their motion, so the Court will assume it weighs against the reasonableness of the requested fee amount.

After considering all the *Johnson* factors, the Court concludes that class counsel's requested fee award is reasonable and fair. Considering the "strong presumption" that the lodestar amount is reasonable, *Ransom*, 734 F.3d at 388 n.17, and the voluntary downward multiplier, the record presents no grounds to decrease the requested fees. Class counsel's requested attorney's fees are therefore approved.

## C. Costs

Class counsel also requests $65,611.12 for the costs expended in this action. (Dkt. #97 at 5).

In addition to attorney's fees, litigation costs also are recoverable as part of a class action settlement. *DeHoyos*, 240 F.R.D. at 334. "The reimbursement of costs and expenses seeks not to reward attorneys for their work but restore the status quo." *In re Chinese-Manufactured Drywall*, 424 F.Supp.3d at 504. Courts have approved requested costs when class counsel provided documents showing the costs, the court found the costs to be typical, and no class member or defendant objected. *Heartland*, 851 F.Supp.2d at 1089 (citing *Radosti v. Envision EMI, LLC*, 760 F.Supp.2d 73, 79 (D.D.C. 2011)).

Those circumstances are present here. Class counsel documented the requested costs, and no class member or defendant has objected. Nor will any class member be responsible for payment of the costs. The Court has carefully reviewed the costs and finds them reasonable and appropriate for a case of this nature. Accordingly, the costs requested are approved.

## D. Incentive Awards

Finally, class counsel requests incentive awards of $5,000 for each named plaintiff, for a total of $20,000. (Dkt. #97 at 6).

"Courts commonly permit payments to class representatives above those received in settlement by class members generally." *Slipchenko v. Brunel Energy, Inc.*, No. 11-CV-1465, 2015 WL 338358, at *13 (S.D. Tex. Jan. 23, 2015) (quoting *In*

*re Heartland*, 851 F.Supp.2d at 1089). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving a $25,000 incentive award). In determining whether to make such an award, courts typically consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

Here, Plaintiffs dedicated substantial time, effort, and risk to protect the interests of the class. They gathered and organized documents related to their respective child's ASD, appealed the denials of coverage, participated in multiple mediations, and were involved in all settlement negotiations. The $5,000 incentive fees are supported by the evidence and well within the range approved in other cases. *See, e.g.*, *Chesapeake Energy Corp.*, 567 F.Supp.3d at 793 (approving incentive award of $5,000 for each named plaintiff); *Izzio*, 2019 WL 10589568, at *11 (approving incentive awards ranging from $10,000 to $3,000); *Slipchenko*, 2015 WL 338358, at *14 (collecting cases). No class member or defendant has objected to the awards. And no class member will be responsible for payments of the awards. Thus, the Court approves the requested incentive awards.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement, Award of Attorney Fees and Litigation Costs, and Incentive

Awards, (Dkt. #102), and Plaintiffs' Unopposed Motion for Approval of Attorney Fees,

Litigation Costs and Case Contribution Awards, (Dkt. #97), are **GRANTED**.

It is therefore **ORDERED** as follows:

1. The Settlement Agreement is approved as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23, and its terms shall bind class members.

2. Class counsel is awarded $416,675.55 in attorney's fees and $65,611.12 in litigation costs. These amounts are authorized to be paid to class counsel from the Qualified Settlement Fund by the claims processor.

3. Upon the occurrence of the conditions set forth in section 2 of the settlement agreement, the Court authorizes the payment of claims administration costs/fees from the Qualified Settlement Fund to the claims administrator. Additional costs related to claims administration and arbitration costs may be paid out of the Qualified Settlement Fund as they become due, as necessary. Class counsel shall document and submit those invoices and payments in connection with class counsel's final report, described below.

4. The claims processor is also authorized to distribute checks to class members and the named Plaintiffs in accordance with the settlement agreement, as approved by the claims processor or on appeal. These amounts are authorized to be paid from the Qualified Settlement Fund.

5. Case contribution awards of $5,000 to each named Plaintiff family, totaling $20,000, as set forth in the settlement agreement is approved. The claims processor is authorized to distribute that sum from the Qualified Settlement Fund.

6. The Claims Processor is authorized to pay the continuing costs of claims administration and class notice from the Qualified Settlement Fund, subject to the review and approval by the parties' counsel. Class counsel shall document such payments to the Court in a final report submitted at the conclusion of this matter.

7. In accordance with the settlement agreement, class counsel is ordered to submit to the Court a final report regarding claims processing and disbursement of funds from the Qualified Settlement Fund by no later than thirty days after the claims processor processes all valid claims, including any late claims authorized for payment by the Court. The report shall detail the payment of court-awarded attorney's fees, costs,

expenses, case contribution awards, costs of notice/administration, payment of class member claims, taxes, and an agreed-upon or court-approved "holdback amount" necessary to complete the activities of and close the Qualified Settlement Fund.

8. The claims processor is authorized to accept late claims (claims submitted after June 30, 2022, through July 13, 2022, inclusive) from class members.

9. The claims processor is authorized to distribute to Defendants any funds remaining after the payment of court-awarded attorney's fees, costs, expenses, case contribution awards, costs of notice/administration, payment of class member claims, taxes, and an agreed-upon or court-approved "holdback amount" necessary to complete the activities of and close the Qualified Settlement Fund. When the Qualified Settlement Fund is closed, the claims processor is authorized to distribute any remaining funds to Defendants.

10. The Court will retain jurisdiction over this action for purposes of enforcing the terms of the class settlement agreement.

The Court will enter a final judgment by separate order.

**So ORDERED and SIGNED this 26th day of September, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE